**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRAVIS KOCHER and | : | |
| MICHAEL MULLEN | : | |
| Plaintiffs, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF MACUNGIE, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

Plaintiffs Travis Kocher and Michael Mullen, by and through undersigned counsel, allege as follows:

## NATURE OF ACTION

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred within this District.

## FACTS

5. Plaintiff Travis Kocher is an adult individual residing in Pennsylvania.

6. At all relevant times, Travis Kocher was employed by Defendant Borough of Macungie as a Sergeant in the Macungie Police Department.

7. At all relevant times, Travis Kocher served as Officer in Charge ("OIC").

8. Travis Kocher is hereafter referred to as "OIC Kocher."

9. Plaintiff Michael Mullen is an adult individual residing in Pennsylvania.

10. At all relevant times, Michael Mullen was employed by Defendant Borough of Macungie as a Corporal in the Macungie Police Department.

11. Michael Mullen is hereafter referred to as "Corporal Mullen."

12. Defendant Borough of Macungie is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania.

13. Defendant Borough of Macungie is a "person" within the meaning of 42 U.S.C. § 1983.

14. Plaintiffs OIC Kocher and Corporal Mullen are hereafter referred to collectively as "Plaintiffs."

15. Plaintiffs served the Borough of Macungie honorably and competently for many years.

16. Plaintiffs were publicly identified as supervisory leadership within the Macungie Police Department.

17. As Officer in Charge, OIC Kocher exercised command-level authority over daily operations.

18. As Officer in Charge, OIC Kocher exercised command-level authority over supervision.

19. As Officer in Charge, OIC Kocher exercised command-level authority over training.

20. As Officer in Charge, OIC Kocher exercised command-level authority over hiring recommendations.

21. Corporal Mullen served in a senior supervisory role.

22. Corporal Mullen was treated by Borough officials as part of Police Department leadership.

23. On January 11, 2024, OIC Kocher authored an internal incident report documenting a confidential matter involving a councilmember.

24. On January 11, 2024, OIC Kocher advised that Council President Ron Karboski had been briefed.

25. Public controversy arose within the Borough concerning Borough Council interference with police operations.

26. Public controversy arose concerning selective scrutiny of police leadership.

27. Public controversy arose concerning governance decisions affecting law-enforcement independence.

28. Plaintiffs' speech and petitioning activity addressed matters of public concern.

29. Plaintiffs' speech and petitioning activity addressed Borough governance.

30. Plaintiffs' speech and petitioning activity addressed interference with police operations.

31. Plaintiffs' speech and petitioning activity addressed accusations directed at the Police Department and its leadership.

32. On October 8, 2025, OIC Kocher corrected Council President Karboski's email documenting that alleged "missing funds" had already been reported and handled through proper channels.

33. On October 27, 2025, a public Borough Council meeting occurred.

34. At the October 27, 2025 meeting, Corporal Mullen spoke off-duty.

35. At the October 27, 2025 meeting, Corporal Mullen spoke as a private citizen.

36. At the October 27, 2025 meeting, Corporal Mullen opposed Council actions.

37. At the October 27, 2025 meeting, Corporal Mullen requested a meeting to discuss police-governance issues.

38. Corporal Mullen requested that meeting because he wished to clear his name.

39. Borough Council declined the request.

40. Corporal Mullen's remarks were not made pursuant to any official duty.

41. Following the meeting, conflict between Borough leadership and Plaintiffs escalated.

42. On November 3, 2025, another public Borough Council meeting occurred.

43. At the November 3, 2025 meeting, Corporal Mullen again spoke as a private citizen.

44. At the November 3, 2025 meeting, Corporal Mullen opposed Council President Ron Karboski.

45.    At the November 3, 2025 meeting, Corporal Mullen requested Karboski's resignation.

46.    Borough employees cast a public vote of no confidence in Karboski.

47.    The November 3, 2025 meeting was recorded.

48.    The meeting became the subject of media attention.

49.    On November 26, 2025, Plaintiffs jointly requested a meeting with Borough Council.

50.    Borough Council denied the request.

51.    These actions were taken off-duty.

52.    These actions were not taken pursuant to official duties.

53.    Borough leadership discussed internally that damaging information was needed to justify removing Plaintiffs from the Police Department.

54.    Borough leadership discussed that a way needed to be found to "push out" Plaintiffs.

55.    These discussions occurred without any citizen complaint.

56.    These discussions occurred without any Internal Affairs predicate.

57.    These discussions occurred without any criminal referral.

58.    Under Pennsylvania law, authority to supervise and control a borough police department is vested in the Mayor, not Borough Council.

59. The Pennsylvania Borough Code does not authorize Borough Council to direct police operations.

60. The Pennsylvania Borough Code does not authorize Borough Council to supervise police personnel.

61. The Pennsylvania Borough Code does not authorize Borough Council to control investigations.

62. In *Hoffman v. Borough of Macungie*, Pennsylvania courts confirmed that Borough Council may not usurp the Mayor's statutory authority over police operations.

63. Borough Council and its members, including Council President Karboski, were on notice of these limits.

64. Borough Council therefore knew it lacked lawful authority to remove or marginalize Plaintiffs through direct action.

65. Confronted with this lack of authority, Borough leadership sought to manufacture pretextual misconduct allegations.

66. These efforts intensified after Plaintiffs engaged in protected speech and petitioning activity.

67. The objective of "digging up dirt" was to cloak unlawful interference in the appearance of legitimacy.

68. This conduct reflected a knowing departure from settled Pennsylvania law undertaken to retaliate against Plaintiffs.

69. On November 7, 2025, Karboski ordered OIC Kocher to cooperate with a disciplinary investigation overseen by outside counsel Patrick Harvey.

70. On November 25, 2025, Harvey emailed Borough officials asserting that Kocher had administered a breathalyzer.

71. Harvey asserted that Kocher failed to arrest an intoxicated employee.

72. Harvey asserted that Kocher had a conflict of interest.

73. These assertions were false.

74. On December 24, 2025, Kocher advised Harvey in writing that he never administered a PBT.

75. Kocher advised that he was not present.

76. Kocher advised that he had no contact with the employee.

77. Kocher identified multiple officers corroborating those facts.

78. Harvey acknowledged receipt.

79. Harvey later confirmed the investigation showed no PBT.

80. Harvey later confirmed there was no conspiracy or cover-up.

81. On December 18, 2025, Borough Council voted to have Corporal Mullen investigated for alleged threats.

82. The reasons for the December 18 investigation were false.

83. No threats were made.

84. On February 2, 2026, Borough Council voted to investigate Corporal Mullen.

85. The reason for the February 2, 2026 investigation was that Corporal Mullen was involved in a criminal investigation of a Borough Council member.

86. The criminal investigation involved alleged self-dealing and abuse of process in the appointment of Borough contract work.

87. On March 4, 2026, Plaintiffs were advised that Council President Karboski stated the Borough needed to get rid of Plaintiffs before criminal charges against him hit.

88. Karboski stated this needed to be done through "misconduct" to prevent Plaintiffs from receiving pensions.

89. Outside executive session, Borough officials and agents communicated to third parties that Plaintiffs and the Police Department were "dirty and corrupt."

90. Council members were instructed not to speak with police personnel because the Department was "dirty and corrupt."

91. These statements were made outside any privileged setting.

92. These statements were understood to refer specifically to Plaintiffs.

93. OIC Kocher requested a name-clearing hearing from the Borough's labor attorney.

94. The request was denied.

95. Kocher requested a name-clearing hearing from former Mayor Ronald Conrad.

96. The request was denied.

97. Kocher requested a name-clearing hearing from Borough Manager John Brown.

98. The request was denied.

99. On March 12, 2026, Borough Council convened an executive session citing the "personnel" exception.

100. During the March 12, 2026 executive session, Borough Council discussed generalized corruption accusations untethered to any personnel action.

101. On April 16, 2026, Borough Council convened an executive session citing "collective bargaining."

102. During the April 16, 2026 executive session, Borough Council made targeted pension and compensation decisions directed at Plaintiffs.

103. Borough Council exceeded the scope of both executive-session exceptions by directing secrecy.

104. Borough Council exceeded the scope of both executive-session exceptions by suppressing disclosure of investigative findings.

105. Borough Council exceeded the scope of both executive-session exceptions by making decisions outside permissible executive-session subjects.

106. Borough officials, including the Borough's labor attorney and Borough Manager, acting at Council's direction, threatened Council members with litigation if they disclosed investigative findings.

107. These threats were issued during and after the March 12 and April 16, 2026 executive sessions.

108. The threats targeted speech on matters of public concern.

109. The threats functioned as a prior restraint suppressing disclosure and public debate.

110. On April 6, 2026, Borough Council voted unanimously to analyze only the Police Department.

111. Following the April 16, 2026 executive session, proposed wage increases were reduced.

112. Council leadership stated that higher raises would benefit Plaintiffs' pension calculations.

113. Council leadership refused those benefits.

114. Borough management altered hiring practices by requiring Council review.

115. These changes undermined OIC Kocher's authority.

116. Plaintiffs suffered economic loss.

117. Plaintiffs suffered diminished pension value.

118. Plaintiffs suffered reputational harm affecting future employment.

119. Plaintiffs suffered professional and emotional harm.

120. The violations alleged were caused by official Borough policy, custom, or ratification.

121. Borough Council acted as a final policymaker for the Borough.

122. Declaratory and injunctive relief are necessary to prevent ongoing and future violations.

123. At all relevant times, the conduct described herein was undertaken pursuant to official municipal policy, custom, or practice of the Borough of Macungie, including actions taken or ratified by Borough Council acting as the Borough's final policymaking authority with respect to police oversight, compensation, investigations, and disciplinary direction.

124. Borough Council, including its President and members, exercised final decision-making authority by directing investigations, influencing compensation and pension decisions, suppressing disclosure of investigative findings, threatening litigation to restrain speech, and intentionally bypassing statutory limits imposed by Pennsylvania law, all with knowledge of and deliberate indifference to the constitutional rights of Plaintiffs.

125. The challenged actions were not isolated incidents, but reflected a deliberate course of conduct undertaken, endorsed, and ratified at the highest level of Borough governance, rendering Defendant Borough of Macungie liable under 42 U.S.C. § 1983.

126. As a result of Plaintiffs' protected speech and petitioning, Defendant initiated investigations, manipulated compensation and pensions, undermined authority, publicly labeled Plaintiffs corrupt, and denied procedural safeguards.

127. These actions would deter a person of ordinary firmness from engaging in protected activity.

128. The stigmatizing corruption statements were made contemporaneously with actions altering Plaintiffs' legal status.

129. Plaintiffs were directly aggrieved by Sunshine Act violations concealing decisions affecting compensation, pensions, and reputations.

130. Threats of litigation chilled exculpatory and corrective speech on matters of public concern.

131. Borough Council's conduct was ultra vires and undertaken in knowing disregard of statutory limits imposed by the Borough Code.

## COUNT I – FIRST AMENDMENT RETALIATION
### *(42 U.S.C. § 1983)*

132. Plaintiffs incorporate by reference paragraphs 1 through 131 of this Complaint as if they were set forth fully here.

133.   Plaintiffs engaged in protected speech and petitioning.

134.   Defendant took adverse actions.

135.   Plaintiffs' speech was a substantial motivating factor.

136.   Defendant violated Plaintiffs' First Amendment rights.

WHEREFORE, Plaintiffs seek damages, declaratory and injunctive relief, attorneys' fees, costs, and all other just relief.

## COUNT II – STIGMA-PLUS DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS
### *(42 U.S.C. § 1983)*

137.   Plaintiffs incorporate by reference paragraphs 1 through 136 of this Complaint as if they were set forth fully here.

138.   Defendant publicly stigmatized Plaintiffs.

139.   Defendant altered Plaintiffs' legal status and denied name-clearing hearings.

WHEREFORE, Plaintiffs seek damages, injunctive relief including a name-clearing hearing, attorneys' fees, and costs.

## COUNT III
## DEFAMATION

140.   Plaintiffs incorporate by reference paragraphs 1 through 139 of this Complaint as if they were set forth fully here.

141.    Defendant published false statements asserting corruption and criminality.

142.    Defendant acted with actual malice.

WHEREFORE, Plaintiffs seek all appropriate relief.

## COUNT IV
## PENNSYLVANIA SUNSHINE ACT

143.    Plaintiffs incorporate by reference paragraphs 1 through 142 of this Complaint as if they were set forth fully here.

144.    Defendant exceeded executive-session exceptions and suppressed public disclosure.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief and attorneys' fees.

## COUNT V
## PRIOR RESTRAINT / SUPPRESSION OF SPEECH
## (42 U.S.C. § 1983)

145.    Plaintiffs incorporate by reference paragraphs 1 through 144 of this Complaint as if they were set forth fully here.

146.    Defendant imposed an unconstitutional prior restraint on protected speech.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief and attorneys' fees.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.


**BROUGHAL & DeVITO, L.L.P.**


Dated:    5/05/2026            By:    /s/ John S. Harrison
                                      JOHN S. HARRISON, ESQUIRE
                                      Attorney I.D. No. 53864
                                      ERIKA A. FARKAS, ESQUIRE
                                      Attorney I.D. No. 313686
                                      38 West Market Street
                                      Bethlehem, PA 18018
                                      Telephone No.:  (610) 865-3664
                                      Facsimile No.:  (610) 865-0969
                                      *Attorneys for Plaintiff*